IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | |
|---|---|
| BRENDA HODGE, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) CV 313-080 <br> ) <br> CAROLYN W. COLVIN, Acting ) <br> Commissioner of Social Security ) <br> Administration, ) <br> ) <br> Defendant. ) | |

---

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

---

Brenda Hodge appeals the decision of the Acting Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

I.  BACKGROUND

Plaintiff applied for SSI on April 3, 2008, alleging a disability onset date of that same day. Tr. ("R."), pp. 204-06. Prior to the current application, Plaintiff had also applied for SSI in September 1995, November 1998, August 2001, October 2002, and July 2004. R. 34. The Social Security Administration denied Plaintiff's current application initially and on reconsideration. R. 113-14. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), R. 139-40,

and the ALJ held a hearing on November 17, 2009. R. 50-70. On March 29, 2010, the ALJ issued an unfavorable decision. R. 115-28. On January 3, 2011, the Appeals Council ("AC") vacated the ALJ's March 29th decision and remanded the case for further proceedings. R. 129-31. A new ALJ held another hearing on October 26, 2011. R. 71-112. At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, and Dennis Conroy, a Vocational Expert ("VE"). Id. On December 2, 2011, the ALJ issued an unfavorable decision. R. 31-49.

Applying the sequential process required by 20 C.F.R. § 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since April 3, 2008, the application date (20 C.F.R. § 416.971 *et seq.*).

2. The claimant has the following severe impairments: depression; anxiety; polysubstance abuse; and partially torn rotator cuff (20 C.F.R. § 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926).

4. The claimant has the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 416.967(c) except her partially torn rotator cuff limits her to work activities that never require climbing ladders, ropes, or scaffolding. She can individually sit, stand, walk, push and/or pull for at least six of eight hours each eight-hour workday. She can lift/carry fifty pounds occasionally (up to 1/3 of an eight-hour workday) and twenty-five pounds frequently (up to 2/3 of an eight-hour workday). She can individually reach overhead with her left upper extremity and crawl for no more than 1/3 of an eight-hour workday.
The claimant's depression, anxiety, and polysubstance abuse limits her to performing work activities with a specific vocational preparation of 1-3. While her concentration may drift for up to 1/3 of an eight-hour workday if the work is repetitive, routine, or boring, she can pay enough attention to details to meet the general productivity requirements of the job(s) within the same workday. Even though her pace might be disrupted once or twice a week, she will still be able to perform assigned tasks by the end of the same workday. Her social interaction with the public, supervisors, and coworkers should be limited to no more than 1/3 of an eight-hour workday although she can work in close proximity with them throughout the entire workday. She is better off working with things rather than people. Although she may be late going to work or returning from a scheduled work break by up to fifteen

2

        minutes per time and it will occur once or twice a week, she will still complete assigned tasks within the same workday. She should avoid constantly changing or fluid work environments. She should not be required to set independent work goals. The claimant is unable to perform any past relevant work. (20 C.F.R. § 416.965).

5.     Considering the claimant's age, education, work experience, RFC, and the testimony of the VE, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 416.969 and 416.969(a)), including stock checker apparel, marker, and hand packager, all unskilled, light exertional level work. Therefore, the claimant has not been under a disability, as defined in the Social Security Act, since April 3, 2008, the date the application was filed (20 C.F.R. § 416.920(g)).

R. 36-44.

Two aspects of the RFC require further explanation. First, "medium work" is defined as work that "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary work." 20 C.F.R. § 416.967(c). Second, using the skill level definitions in 20 C.F.R. § 416.968(a), the Dictionary of Occupational Titles lists a specific vocational preparation (SVP) time for unskilled work of 1-2 and semi-skilled work of 3-4. See SSR 00-4p, 2000 WL 1898704, at *3 (Dec. 4, 2000). Thus, in assigning Plaintiff an RFC restricting her to work activities with an SVP no greater than 1-3, the ALJ limited Plaintiff to unskilled and semi-skilled work. As detailed herein, all of the jobs identified as available for Plaintiff were at the unskilled level. R. 44.

When the AC denied Plaintiff's request for review of the new decision issued after remand, R. 1-6, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal or remand of the adverse decision. Plaintiff argues that the Commissioner's decision is not supported by substantial evidence because the ALJ did not find that Plaintiff's borderline intellectual functioning ("BIF") was a severe

impairment. (See doc. no. 12 ("Pl.'s Br.").) The Commissioner maintains that the ALJ's decision is supported by substantial evidence and should therefore be affirmed. (See doc. no. 13 ("Comm'r's Br.").)

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004). Finally, the Commissioner's findings of fact must be grounded in the entire record;

a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III. DISCUSSION

Plaintiff argues the ALJ erred at step two of the sequential process when he did not list her level of intellectual functioning as a severe impairment. In particular, Plaintiff argues the ALJ erred because he (1) required production of school records to validate a diagnosis of BIF, (2) relied upon the absence of other diagnoses to prove she did not have BIF as provisionally diagnosed by consultative examiner, John C. Whitley, III, Ph.D., and (3) failed to adopt the first ALJ's finding that her BIF was a severe impairment. Pl.'s Br., pp. 6-11. The Commissioner counters that Plaintiff did not establish the existence of BIF and that the second ALJ was not bound by the findings in the first ALJ's vacated opinion. Comm'r's Br., pp. 3-8.

### A. The Findings in the Vacated Opinion of the First ALJ Do Not Bind the Second ALJ.

The first ALJ found Plaintiff had the following severe impairments: BIF, depression, anxiety, and polysusbtance abuse (in reported remission). R. 120. Citing to Acquiescence Rulings ("SSARs") issued for the Sixth Circuit, Plaintiff claims adjudicators are required "to adopt a finding from the prior claim in the new, unadjudicated claim, unless there is new and material evidence or a

change in the law." Pl.'s Br., p. 11; see SSAR 98-4(6), 1998 WL 283902, at *2-3 (SSA June 1, 1998) for Drummond v. Comm'r of Soc. Sec., 126 F.3d 837 (6th Cir. 1997) and SSAR 98-3(6), 1998 WL 283901, at *3 (SSA June 1, 1998) for Dennard v. Sec'y of Health and Human Servs., 907 F.2d 598 (6th Cir. 1990). According to Plaintiff, when the AC remanded, it "left undisturbed the finding that the BIF was a severe impairment, i.e., affirming the decision." Id. (citing R. 130, 131).

The SSARs to which Plaintiff refers do not apply to this case because there was no final determination of Plaintiff's claim. In both cases at issue in the SSARs, the first claim of the plaintiff did result in a final decision that had some preclusive effect in the consideration of subsequent claims by the same plaintiff, involving the same issues.[1] See SSAR 98-4(6), 1998 WL 283902, at *2-3; SSAR 98-3(6), 1998 WL 283901, at *2-3; see also 20 C.F.R. § 416.1457(c)(1) (explaining res judicata applies where there has been a prior final decision based on the same facts and the same issue(s)). Here, there was no prior final decision by the first ALJ. The AC's remand order states that it "vacates the hearing decision" and directs the ALJ to "take any further action needed to complete the administrative record and issue a new decision." R. 130-31. Contrary to Plaintiff's assertion, the remand order made no mention of affirming or leaving undisturbed any portion of the prior decision. In furtherance of the ACs instructions, the second ALJ completed the administrative record, held a second hearing, and made new findings as to all five steps.

In sum, the second ALJ was not bound to adopt any of the first ALJ's findings, including the finding that one of Plaintiff's severe impairments was BIF, and this argument forms no basis for reversal or remand. In any event, the argument is a red herring because the second ALJ determined that Plaintiff had multiple severe impairments, including mental impairments other than BIF, and

---

[1] Of course, as the Commissioner also points out, the SSARs apply by their plain language only to claimants who reside in Kentucky, Michigan, Ohio, or Tennessee. Comm'r's Br., p. 6; SSAR 98-4(6), 1998 WL 283902, at *3; SSAR 98-3(6), 1998 WL 283901, at *3.

thus continued on with the sequential process by carefully considering any limitations imposed by Plaintiff's intellectual functioning and incorporating them in Plaintiff's RFC. See Heatly v. Comm'r of Soc. Sec., 382 F. App'x 823, 824-25 (11th Cir. 2010) (finding no error at step two where ALJ identified status-post cervical fusion but not separately diagnosed chronic back pain as a severe impairment because ALJ continued on to consider all impairments in combination, including claimant's subjective complaints, limitations, and diagnoses related to pain during remaining steps of sequential process). Indeed, the ALJ identified unskilled jobs for her that could accommodate drifts in concentration, disruptions in pace, and limited social interaction. R. 39, 44.

### B. Substantial Evidence Supports the ALJ's Decision that Plaintiff Has No Severe Intellectual Impairment.

A severe impairment is one that significantly limits one's ability to perform "basic work activities." 20 C.F.R. § 416.921(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."). Basic work activities involve "the abilities and aptitudes necessary to do most jobs." Id. § 416.921(b). Examples include:

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

(2) Capacities for seeing, hearing, and speaking;

(3) Understanding, carrying out, and remembering simple instructions;

(4) Use of judgment;

(5) Responding appropriately to supervision, co-workers and usual work situations; and

(6) Dealing with changes in a routine work setting.

Id.

Thus, in order to show a severe impairment, Plaintiff bears the burden of demonstrating that such impairment significantly affects her ability to perform basic work activities. See McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986); Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984). At the second step of the sequential evaluation process, if the claimant does not have "any impairment or combination of impairments which significantly limits [her] physical or mental ability to do basic work activities," without consideration of age, education, or work experience, then the ALJ will find that she does not have a severe impairment and is therefore not disabled. 20 C.F.R. § 416.920(c); see also Cantrell v. Bowen, 804 F.2d 1571, 1573 (11th Cir. 1986) ("[T]he claimant need only show that an abnormality's effect is not so minimal that it would not interfere with [her] ability to work irrespective of [her] age, education, or work experience.")

Substantial evidence supports the ALJ's finding that Plaintiff has no severe intellectual impairment, which is evident from the ALJ's thorough discussion of the many problems with the provisional BIF diagnosis made by consultative examiner Dr. Whitley. While acknowledging that Plaintiff's IQ test scores of 55 Verbal and 51 Full Scale suggested Plaintiff was functioning in the extremely low range, the ALJ pointed to Dr. Whitley's opinion that the results were an underestimation of Plaintiff's true level of functioning based on a lack of motivation and reported visual problems. R. 36, 409. Indeed, Dr. Whitley opined that Plaintiff "was attempting to exaggerate her current level of dysfunction," and that she had the ability to follow directions, manage her own finances, and with some assistance, she could organize her activities of daily living. R. 40, 408, 410, 411. Dr. Whitley concluded Plaintiff's "ability to engage in competitive employment is limited but not precluded." R. 40, 411.

The ALJ also cited records from Plaintiff's mental health treatment providers which indicated at most, moderate mental limitations. R. 37, 40. One set of records cited by the ALJ from the Community Mental Health Center, dated May 13, 2008, indicates Plaintiff has no barriers to learning and "no problems" with reading ability. R. 37, 433. Indeed, Plaintiff reported that her leisure and recreation activities included reading, and she identified literacy/basic math as strengths and abilities. R. 434. Though subsequently changed by virtue of prompting from her attorney at the hearing before the ALJ, Plaintiff also initially testified that she reads books to help with her panic attacks. R. 39, 89-90. Kenneth J. Marks, D.O., stated on the Initial Psychiatric Evaluation from the May 13th visit that Plaintiff is well known both to him and the staff "as someone who is malingering for a disability check so we do have a high suspicion on [Plaintiff] at this time." R. 438. Dr. Marks went on to note that treatment notes from March 2001 also indicate "malingering for disability check." Id.

The ALJ also concluded that Plaintiff's reported activities of daily living demonstrate adequate mental functioning for work: she drives, grocery shops with others, cooks using a microwave, watches television and listens to the radio, and talks on the phone. R. 41. The ALJ also acknowledged Plaintiff's statements that she avoided people and has become withdrawn, yet she told mental health personnel that she socializes with her boyfriend, family and friends. R. 40, 763. The ALJ also noted that Plaintiff had moved into her own apartment and was able to live alone without requiring support from others. R. 42, 79, 95. Plaintiff also had obtained a Certified Nursing Assistant certificate, though she testified the class instructor gave her the answers to the test, and had worked in a nursing home. R. 42, 85-86.

The ALJ thus considered the entire record and determined, based on substantial evidence, that Dr. Whitley's sole, provisional diagnosis of BIF based on a one-time, consultative

examination did not equate to a severe intellectual impairment, especially when even Dr. Whitley expressed concerns about Plaintiff's effort and her IQ test results.

Contrary to Plaintiff's argument, the ALJ did not require school documentation to establish BIF. In discussing Dr. Whitley's provisional diagnosis, the ALJ stated, "[t]here is no school record documentation to support the diagnosis, and the examiner also noted malingering during IQ testing. Additionally, despite years of treatment, no mental health treating professional has given such a diagnosis." R. 37. Plaintiff's fixation on the phrase referencing school record documentation is misplaced because the ALJ mentioned the records as only one factor undercutting the BIF diagnosis. Moreover, the ALJ acted consistent with Eleventh Circuit precedent when he cited in support the absence of a BIF diagnosis across years of mental health treatment. See Werner v. Comm'r of Soc. Sec., 421 F. App'x 935, 937-40 (11th Cir. 2011) (rejecting claimant's argument "that the ALJ made an impermissible 'negative inference' by noting the lack of evidence" regarding reports by a claimant of alleged side effects of medication).

In sum, substantial evidence supports the ALJ's conclusion that Plaintiff's intellectual capacity is not sufficiently diminished to qualify as a severe impairment. The ALJ's consideration of the entirety of the record evidence confirmed Plaintiff's level of intellectual functioning does not significantly limit her ability to perform basic work activities, and the ALJ's RFC accounted for any job restrictions related to intellectual functioning. Thus, there is no basis for reversal or remand.

IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final

judgment be **ENTERED** in favor of the Commissioner.

SO **REPORTED** and **RECOMMENDED** this 5th day of November, 2014, at Augusta, Georgia.

/s/ Brian K. Epps
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA